

**NUMBER 13-08-412-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**IN RE: HOPE LUMBER & SUPPLY CO., L.P.**

**On Petition for Writ of Mandamus**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Through a petition for writ of mandamus, relator, Hope Lumber & Supply Co., L.P. ("Hope"), seeks to compel the trial court to vacate its order denying Hope's motion to compel arbitration. We conditionally grant the writ.

### I. Background

Real party in interest, Cirilo Licea, worked for Hope as a forklift driver. He was injured in the course and scope of employment and filed a workers' compensation claim. He was later terminated. Licea brought suit against Hope alleging that he was discharged in retaliation for filing a workers' compensation claim. *See* TEX. LAB. CODE ANN. § 451.001

(Vernon 2006). Hope filed a motion to compel arbitration under the Federal Arbitration Act ("FAA") based on an arbitration agreement signed by Licea. The agreement provides, in part:

> Under this policy, which is . . . binding upon the Company and the employee(s), all claims and disputes a current or former employee within the United States might have arising out of the employee's employment or termination of employment . . . shall be resolved through binding arbitration.

The agreement further provides that Hope intends to submit to arbitration "to the fullest extent permitted by law, all disputes an employee might have against the Company . . . ." The only claims not encompassed by the arbitration agreement are "those the employee might have for workers' compensation benefits, unemployment compensation benefits, and claims under any of the Company's qualified benefit or pension plans."

## II. FAA

The FAA applies to transactions that involve commerce. *See* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App.–San Antonio 2003, orig. proceeding).

According to affidavit testimony proffered by Hope, Hope is a supplier of building materials to professional builders, contractors, and consumers, and it operates in multiple states across the nation. Absent evidence to the contrary, "the relationship between an

employer who is regularly engaged in activities related to interstate commerce and its employees is affected by interstate commerce as a matter of law and implicates commerce clause issues." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex. App.–El Paso 2005, orig. proceeding). In the instant case, Licea contends that whether the FAA applies is a premature question, but does not otherwise contest its application. Because we conclude that the FAA applies, mandamus is the appropriate method of review.

### III. Standard of Review

A writ of mandamus will issue if the trial court has clearly abused its discretion and there is no other adequate remedy of law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Id.* at 839-40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (section 4 of the FAA provides, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate

under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement").

## IV. Validity and Scope

A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing

4

arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

In the instant case, Licea signed the agreement to arbitrate. Licea's arguments below and on appeal do not deny the existence of this signed document. Accordingly, we conclude that relator has established the existence of an arbitration agreement. Moreover, given the breadth of the arbitration agreement requiring the arbitration of "all claims and disputes," and Hope's express statement that it intends to arbitrate those disputes "to the fullest extent permitted by law," we conclude that the claims at issue in this lawsuit fall within the scope of this agreement. See, e.g., *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754.

## V. Defenses

Having concluded that a valid arbitration agreement exists and Licea's claims fall within the scope of that agreement, we now turn our attention to Licea's alleged defenses to arbitration. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.–Corpus Christi 1994, no writ).

Licea asserts that the trial court did not abuse its discretion in refusing to compel arbitration because: (1) his claim for retaliatory discharge did not fall within the scope of the agreement; (2) the agreement to arbitrate is too indefinite; (3) the agreement is

5

unconscionable; (4) the agreement is illusory because Hope can avoid the mutuality of obligation by termination of its employees; and (5) Hope waived its right to arbitration because it terminated Licea.

We have already concluded that Licea's claim for retaliatory discharge fell within the scope of the arbitration agreement, and, accordingly, need not further address this issue herein.

## A.  Indefiniteness

Licea contends that the arbitration agreement is too indefinite to show a meaningful agreement to arbitrate Licea's claims for retaliatory discharge.  An order to arbitrate under the FAA should not be denied unless it can be said with positive assurance that the arbitration agreement is not susceptible to an interpretation that covers the asserted dispute.  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex. App.–Houston [1st Dist.] 1997, orig. proceeding).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Hou-Scape*, 945 S.W.2d at 205.

In the instant case, the agreement expressly requires arbitration of "all claims and disputes a current or former employee . . . might have arising out of the employee's employment or termination of employment."  Thus, we hold that this language evinces a "meaningful agreement" and is sufficiently certain to show that Licea's claim for retaliatory discharge lies within the scope of the arbitration provision and is subject to arbitration.

## B.  Unconscionability

Licea contends that the arbitration agreement is unconscionable because the cost of arbitration has not been determined and the arbitrator has "unfettered discretion in

6

assessing costs against the employee." In connection with costs, the agreement provides:

> As a benefit to employees, the Company will pay all of the expenses and fees of the arbitrator and the AAA's (or other arbitration service) arbitration administrative costs with the following exceptions.
>
> [1]    $100 of the fee required by the AAA (or other arbitration service) for an employee or former employee to initiate the arbitration process.
>
> [2]    Any fees, expenses, costs or charges that the arbitrator, at his or her sole discretion, may require the employee or former employee to pay. The arbitrator will consider the relative merit of the complaint(s) and the income level of the employee or former employee among many factors in making such determination.

Both the United States and Texas Supreme Court have recognized that the existence of large arbitration costs could preclude litigants from effectively vindicating their statutory rights in an arbitral forum. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756. While neither court specified how detailed the showing of prohibitive expense must be, the party opposing arbitration must prove the likelihood of incurring such costs and produce some specific information substantiating the alleged costs. *Green Tree Fin. Corp.*, 531 U.S. at 90; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756; *see In re December Nine Co.*, 225 S.W.3d 693, 702 (Tex. App.–El Paso 2006, orig. proceeding).

Licea has provided no evidence regarding the alleged costs of the arbitration or his ability, or lack thereof, to pay such costs. Because the record contains no specific evidence that Licea will actually be charged excessive arbitration fees, we conclude that there is legally insufficient evidence that the arbitration agreement is unconscionable based on excessive costs. *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757; *In re December Nine Co.*, 225 S.W.3d at 702.

7

### C. Termination

Licea contends that "the arbitration agreement is illusory because [Hope] did avoid the mutuality of obligation by terminating the employee." In a similar vein, Licea argues that Hope waived its right to arbitration because it terminated Licea.

An arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding); *D.R. Horton, Inc. v. Brooks (In re D.R. Horton)*, 207 S.W.3d 862, 867 (Tex. App.–Houston [14th Dist.] 2006, orig. proceeding) ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice.").

Contrary to Licea's argument, however, the arbitration agreement at issue is expressly "binding" on Hope and applies to "current or former" employees arising from their "employment or termination." Moreover, the agreement further provides that Hope "reserves the right to change, modify, or discontinue this policy at any time upon at least 10 days' written notice to the Company's current employees, except that the terms of the policy that are in place at the time a disputed action takes place are the terms which will be binding on the Company and the employee or former employee." Accordingly, the agreement at issue herein is not illusory and does not lack mutuality of obligation. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 (Tex. 2003); *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002) (orig. proceeding). In this context, we note that the agreement expressly provides that the policy "does not in any way alter the "at will" status of the employee's employment," and iterates that nothing in the agreement limits either the employee's right to resign or limits Hope from terminating the employee's employment "for

8

any reason at any time."  Such language does not negate the existence of an arbitration agreement.  *See, e.g., In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 766 (Tex. App.–Houston [1st Dist.] 2002, orig.  proceeding) (discussing the "at-will" employment status and its relationship to an arbitration agreement).  Thus, Hope did not waive application of the arbitration agreement by terminating Licea.

In conclusion, Hope did not retain a unilateral right to terminate or change the provisions of the arbitration agreement, and accordingly, we reject Licea's arguments otherwise.

## VI.  Conclusion

We conditionally grant Hope's petition for writ of mandamus and direct the trial court to compel arbitration.  We are confident that the trial court will promptly comply, and our writ will issue only if it does not.

_____
GINA M. BENAVIDES
Justice

Memorandum Opinion delivered and
filed this the 29th day of August, 2008.

9